UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

**WENDELL T. BENJAMIN**                              **CIVIL ACTION NO. 06-1917**

**VS.**                                              **JUDGE MELANÇON**

**MICHAEL ASTRUE, Commissioner**                     **MAGISTRATE JUDGE METHVIN**
**Social Security Administration**

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be **AFFIRMED**.

*Background*

Born on April 28, 1961, Wendell Benjamin is a 46-year-old claimant with an eleventh grade education (Tr. 108, 135, 338, 367). Benjamin worked in the past as a cab driver, cook and mechanic (Tr. 130, 143). On September 20, 2003, Benjamin filed an application for supplemental security income, alleging disability beginning May 25, 2000 (Tr. 120, 129) due to problems with his hands, arms, shoulders, legs and knees. Following an administrative hearing on January 10, 2005 (Tr. 332), the Administrative Law Judge (ALJ) concluded that Benjamin was not disabled (Tr. 56).

On October 5, 2005, the Appeals Council granted Benjamin's request for review, vacated the hearing decision, and remanded the case for resolution of issues, an opportunity for a new hearing and the issuance of a new decision (Tr. 76-77). Another administrative hearing which was held on April 4, 2006 (Tr. 84, 362-398). The ALJ rendered an unfavorable decision on May

2

23, 2006 and the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner from which Benjamin now appeals (Tr. 4-6, 14-20).

## *Assignment of Errors*

Benjamin raises the following grounds for appeal:  (1) the ALJ erred in finding that Benjamin's carpal tunnel syndrome was non-severe; (2) the ALJ improperly assessed his residual functional capacity when she failed to take into consideration his carpal tunnel syndrom and resulting limitations; and (3) the ALJ improperly relied on the vocational expert's testimony.

## *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards.  Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991).  The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion.  Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision.  Johnson, 864 F.2d at 343.

3

*Procedure for Analysis of Impairments and the ALJ's Findings*

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.[1]

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

In the instant case, at Step 2, the ALJ determined that Benjamin suffered from the following severe impairments: osteoarthritis of the knees, chronic low back pain, hepatitis C and obesity.[2] The ALJ, *citing* Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985), concluded that Benjamin's carpal tunnel syndrome was no more than a slight abnormality and was not expected to impact his ability to perform work. At Step 5, the ALJ found that Benjamin could perform a modified range of sedentary work. Relying on the testimony of a vocational expert, the ALJ

---

[1] "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir.1985).

[2] Tr. 16.

4

found that there were jobs existing in significant numbers which Benjamin could perform, and therefore he was not disabled.

*Medical History*

The entirety of Benjamin's medical care has been provided at University Medical Center in Lafayette, La. (Tr. 165-273, 282-308). On August 22, 2003, Benjamin presented at UMC with a medical history of carpal tunnel syndrome (Tr. 194). On August 26, 2003, Benjamin was admitted to UMC for a release of carpal tunnel on the left (Tr. 185). Benjamin's discharge summary states that there were no complications from the procedure (Tr. 186). Benjamin was scheduled for follow-up in two weeks (Id.).

On September 11, 2003, Benjamin returned to UMC, complaining of level-5 pain in his left hand and wrist, with occasional numbness and tingling. He was told to return in a week for wound care (Tr. 183). On September 18, 2003, Benjamin returned to UMC, complaining of level-7 pain (Tr. 182). The notes state that Benjamin "denies any numbness or tingling at present" but "voices spasm to thumb and index finders and burning to left arm" (Id.).

On September 25, 2003, Benjamin visited UMC. The physician's notes state, "patient complaining of DeQuervain's syndrome today. I will inject the . . .tendon" (Id.).[3]

On October 7, 2003, Benjamin complained of eye problems and hand pain (Tr. 180). Benjamin was prescribed Zocor and lab work was done (Id.).

On November 20, 2003, Benjamin complained of generalized pain, tiredness, pain in arms, back, and legs (Tr. 266). The physician noted that the last time he saw him he had

---

[3] DeQuervain's Syndrome, known as "Washerwoman's Sprain," is defined as "stenosing tenosynovitis of the short extensor . . and long abductor tendon . . . of the thumb." The Merck Manual of Diagnosis and Therapy (Mark H. Beers, M.D. and Robert Berkow, M.D., et al. Eds., 1999).

tenderness of abductor of thumb which was injected (Id.).  The notes reflected that Benjamin has hepatitis C (Id.).

On November 26, 2003, Dr. Chanis, cardiologist, noted that Benjamin could not tolerate a stress test due to his knee pain (Tr. 264).  The physician recommended diet, exercise and weight loss (Id.).   An April 29, 2003, Echocardiographic Report also showed an ejection fraction of 60 % (Tr. 212).

On November 20, 2003, Benjamin complained of generalized pain and had tenderness of abductor of thumb (Tr. 266).  The notes reflect that Benjamin had an injection to his hand at his last visit on September 25, 2003 and that it "helped for two hours" (Tr. 266).  On November 26, 2003, Benjamin complained of pain to knees, elbows, and wrists (Tr. 265).

On December 5, 2003, progress notes made during Benjamin's visit to the UMC indicate a diagnosis of chronic hepatis C, obesity, tobacco abuse, and chronic pain to wrist and knees (Tr. 261).   On February 12, 2004, Benjamin again visited UMC, complaining of knee, back, and hand pain (Tr. 168).  The Progress Notes state "left side swelling" (Id.).   He was prescribed Vioxx and Mevacor and told to return in six months for follow up (Tr. 167).

Benjamin complained of chest pain on March 12, 2004 (Tr. 285) and again on March 15, 2004 (Tr. 288).  He was admitted to UMC on March 16, 2004 (Tr. 289).  He underwent a left heart catherization, selective coronary angiography, and left ventriculography (Tr. 290).  The impression was normal coronary anatomy, left dominant; normal left ventriculogram.

6

On May 12, 2004, Benjamin was referred to Dr. Joseph Henry Tyler, Mental Health Center. The diagnosis states, "depression, Hep C, HTN" (Tr. 304).

On June 16, 2004, Benjamin presented with a clinical history of left sided weakness (Tr. 302). CT images of his brain were within normal limits.

*Consultative Exam*

Dr. Lori Taylor examined Benjamin on April 2, 2005 (Tr. 309-310). As to his history, Dr. Taylor noted the following: Benjamin sustained a work related injury in 2000; following his 2002 move to Lafayette continued numbness in his shoulders, continued upper body weakness, bilateral hand swelling and left carpal tunnel syndrome for which he had surgery. Benjamin reported decreased sensation in both hands. Benjamin reported that he sleeps on three pillows and cannot lie flat due to his back pain. He reported that he was newly diagnosed with asthma but was not on medical therapy for it. He could not quantify how long he could stand at one time but states that he could stand for 1½ hours during an eight hour day; he could walk on level ground for three blocks; could sit for 1¾ hours; could lift ten pounds; is able to drive a car and perform some household chores such as shopping, vacuuming, cooking.

Dr. Taylor noted that Benjamin was obese, not in apparent distress, ambulated well, got up and out of the chair without difficulty, and got on and off the exam table without difficulty. His hearing was normal and speech was 100% understandable. Dr. Taylor's impression was: 1) hyperlipidemia; 2) hepatitis C but no ascites, hepatomagelay; or jaundice; 3) chronic low back pain, a positive straight leg raises on left; no significant limited range of motion of the L spine on exam and no assistive devices for ambulation; 4) chest pain consistent with angina, negative heart cath in March, 2004; no chest pain on exam. Dr. Taylor reported as to Benjamin's

7

allegations of weakness that he was neurologically intact on exam; did not exhibit any weakness or atrophy. Dr. Taylor concluded that Benjamin "was able to sit, stand, walk and handle objects without difficulty and was able to hear and speak at normal conversational levels."

### *Findings and Conclusion*

### 1. Severity Finding

Benjamin maintains the ALJ erred in determining that his carpal tunnel syndrome was not a severe impairment.

At Step 2 the ALJ concluded the following:

> The claimant alleged an inability to work due to carpal tunnel syndrome. On August 26, 2003, the claimant underwent release of the left volar carpal ligament. He was discharged the same day diagnosed with carpal tunnel syndrome, left. When seen for a follow-up visit in September 2003, the claimant reported no numbness or tingling present in the left hand. He did not indicate any problems with his hands when evaluated in 2004. When evaluated by Dr. Taylor, his grip strength was 5/5 bilaterally. Dr. George Smith, the medical expert, testified that the claimant's carpal tunnel syndrome was mild and the claimant had no limitations in regards to his hands. The Administrative Law Judge finds the claimant's carpal tunnel syndrome to be no more than a slight abnormality and is not expected to impact his ability to perform work regardless of his age, education or work history. Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985).

(Tr. 17). Under Fifth Circuit jurisprudence, "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985), *citing* Estran v. Heckler, 745 F.2d 340, 341 (5th Cir.1984). See also Brady v. Heckler, 724 F.2d 914, 920 (11th Cir.1984); Martin v. Heckler, 748 F.2d 1027, 1032 (5th Cir.1984); Davis v. Heckler, 748 F.2d

8

293, 296 (5th Cir.1984).[4]  "Because a determination whether an impairment(s) is severe requires an assessment of the functionally limiting effects of an impairment(s), symptom-related limitations and restrictions must be considered at this step of the sequential evaluation process, provided that the individual has a medically determinable impairment(s) that could reasonably be expected to produce the symptoms." SSR 96-3p, 1996 WL 374181 at *2 (Jul. 2, 1996).

Benjamin maintains that the ALJ selectively chose the September, 2003 report which stated that he denied any numbness or tingling at present to support her decision.  Benjamin argues, the progress note also indicated that he complained of thumb and index finger spasms and burning to left arm.  The ALJ noted that Benjamin did not state any problems with his hands in 2004.  The medical records show, however, that Benjamin continued to complain of hand pain and numbness up until February 12, 2004 (Tr. 168).

A claimant's subjective complaints must be corroborated at least in part by objective medical testimony.  Houston v. Sullivan, 895 F.2d 1012, 1016 (5th Cir. 1989).  When there are conflicts between subjective complaints of pain and objective evidence, the ALJ is to evaluate the claimant's credibility.  Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991).  "How much pain is disabling is a question for the ALJ since the ALJ has primary responsibility for resolving conflicts in the evidence."  Carrier, 944 F.2d at 246.  This court may not reweigh the evidence. Id., citing Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir.1990).

SS Ruling 96-3p further provides:

---

[4] The Fifth Circuit requires that the correct severity standard by set forth by reference either by reference to Stone or another of the same effect. Stone, 752 F.2d at 1101. As referenced, the ALJ properly referred to the correct standard in this case.

9

>  Symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect an individual's ability to do basic work activities unless the individual first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s). (See SSR 96-4p, "Titles II and XVI: Symptoms, Medically Determinable Physical and Mental Impairments, and Exertional and Nonexertional Limitations.") The finding that an individual's impairment(s) could reasonably be expected to produce the alleged symptom(s) does not involve a determination as to the intensity, persistence, or functionally limiting effects of the symptom(s). However, once the requisite relationship between the medically determinable impairment(s) and the alleged symptom(s) is established, the intensity, persistence, and limiting effects of the symptom(s) must be considered along with the objective medical and other evidence in determining whether the impairment or combination of impairments is severe.

In finding that Benjamin's carpal tunnel syndrome was not severe, the ALJ references Dr. Taylor's finding that Benjamin's grip strength on April 2, 2005 was 5/5 (Tr. 17). Benjamin objects that the ALJ improperly relied on Dr. Taylor's report for two reasons. First, in that the ALJ failed to reference his objections to Dr. Taylor's testimony as set forth in his May 23, 2005 letter to ALJ Markart. In that letter, Benjamin disagreed with some of Dr. Taylor's findings as follows: Dr. Taylor had to help him sit up after lying on the table and he had to use a filing cabinet to help himself up after bending; that she said he had no swelling when "all my left side stay swolling, my left leg + knee, my left hand. She didn't even look at my leg or knee. And she I could handled objects there was not objects to handled." (Tr. 162-163).

Benjamin did not subpoena Dr. Taylor for the hearing conducted on April 4, 2006. While the ALJ did not reference Benjamin's objections to the content of Dr. Taylor's report, in the absence of Benjamin's request that Dr. Taylor appear for cross examination, the undersigned is not persuaded that Dr. Taylor's report should be disregarded. Moreover, while Benjamin

10

disagrees with Dr. Taylor's opinion that he could handle objects, he admits that Dr. Taylor held his left hand while she helped him up from the examining table (Tr. 162-163).

Benjamin also "call[s] into question" whether Dr. Taylor is actually the doctor who examined him based on his attorney's recent awareness that all of the reports received from Med-Plus physicians utilized by the SSA for consultative examinations share the peculiarity that the last page is a faxed page. Benjamin states that Dr. Taylor's signature page was faxed on April 11, 2005, although it was typed on April 6, 2005. He also points out that the faxed signature page is numbered page 15, although the report was only 4 pages. The fax shows it came from a (504) area which is a New Orleans area code while the report indicates an address for Dr. Taylor in Shreveport, Louisiana. Benjamin also argues that the American Medical Association website shows Dr. Lori Stephanie Taylor was based out of New Orleans.

> . . . [A] written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings in his area of competence may be received as evidence in a disability hearing and, despite its hearsay character and an absence of cross-examination, and despite the presence of opposing direct medical testimony and testimony by the claimant himself, may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant, when the claimant has not exercised his right to subpoena the reporting physician and thereby provide himself with the opportunity for cross-examination of the physician.

Richardson v. Perales, 402 U.S. 389, 402, 91 S.Ct. 1420, 1428 (U.S.1971).

Title 20 C.F.R. § 416.1519n(e) requires all consultative examination reports to be "personally reviewed and signed by the medical source who actually performed the examination." This requirement attests to the fact that the examining medical source is solely responsible for the report contents and conclusions.

11

A review of Dr. Taylor's report shows a thorough examination of Benjamin which includes the examiner's signature as required by the Regulations. Benjamin's representative received and reviewed Dr. Taylor's report on June 9, 2005 but did not challenge its veracity (Tr. 55). The undersigned is not persuaded that Benjamin has presented a factual basis to disregard Dr. Taylor's report, particularly in view of his failure to subpoena her for cross-examination at his hearing. Dr. Taylor's findings that Benjamin could handle objects without difficulty is further supported by the expert medical opinion of Dr. George R. Smith who was present for Benjamin's testimony at his April 4, 2006 hearing. After hearing Benjamin's testimony and having reviewed his medical records, Dr. Smith concluded that Benjamin's carpal tunnel syndrome wold not limit his ability to lift, carry or manipulate his hands (Tr. 391). Benjamin testified at the hearing that he could lift a gallon of milk but needed to use to hands to pour it (Tr. 377). Benjamin also testified that he could bend over and pick up a pin that was lying on a table; could pick up a coin or a button off of a table surface; and could reach forward and reach over his head with his right hand but not his left (Tr. 384-385).

Based on the foregoing, the undersigned concludes that there is substantial evidence to support the ALJ's finding that Benjamin's carpal tunnel syndrome was not severe.[5]

2. **Residual Functional Capacity**

---

[5] Although Dr. Taylor recommended that a nerve conduction study be conducted for a thorough examination, at the same time she concluded that it did not appear that Benjamin required such a study (Tr. 312). The Fifth Circuit has stated that under some circumstances a consultative examination is required to develop a full and fair record but that the decision to require such an examination is discretionary. Jones v. Bowen, 829 F.2d 524, 526 (5th Cir. 1987). A full inquiry does not require a consultative examination at government expense unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision. Id. Here, a disability determination can be made without the nerve conduction study.

12

At Step 4, the ALJ concluded that Benjamin had residual functional capacity ("RFC")to perform:

> . . . a modified range of sedentary work. [Benjamin] can lift/carry ten pounds occasionally and less than ten pounds frequently. He can stand/walk six hours of eight but not continuously; sit six hours of eight with postural changes; he can less than occasionally climb, kneel and squat; occasionally balance, stoop and crouch; he is precluding from concentrated exposure to temperature extremes; occasional exposure to fumes, odors, dust gases and poor ventilation; he cannot work around hazardous machines or at unprotected heights and he is limited to simple (one to two step) job instructions due to pain.

(Tr. 18). Benjamin argues that he established a medically determined impairment, his bilateral carpal tunnel syndrome, that resulted in continued pain, numbness, tingling, and swelling, and the ALJ failed to properly consider this impairment and its resulting limitations when assessing his RFC.

It is well-settled in the Fifth Circuit that an ALJ must consider the cumulative effects of all of an applicant's impairments. "Since the Secretary must evaluate the evidence in relation to the particular individual seeking benefits, where there are several illnesses suffered simultaneously by the claimant, the combined effect of the impairment [s] must be considered" by the Secretary in evaluating a disability claim. Dorsey v. Heckler, 702 F.2d 597, 605 (5th Cir.1983). "[T]he Act seeks to administer relief to the whole man and not simply to serve as a vehicle for the separate clinical analysis of individual ailments." Id. at 605. In Loza v. Apfel, the court noted:

> In determining whether a claimant's physical or mental impairments are of a sufficient medical severity as could be the basis of eligibility under the law, the ALJ is required to consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. See 20 C.F.R. §404.1523; Crowley v. Apfel, 197 F.3d 194, 197 (5th Cir.1999); Anthony v. Sullivan, 954 F.2d 289, 293 (5th Cir. 1992);

13

> Sewell v. Heckler, 764 F.2d 291, 294 (5th Cir. 1985); Davis v. Heckler, 748 F.2d 293, 296 (5th Cir. 1984); Estran v. Heckler, 745 F.2d 340, 341 (5th Cir. 1984).
> \*\*\*
> The law of this Circuit requires consideration of the combined effect of impairments: "The well-settled rule in this Circuit is that in making a determination as to disability, the ALJ must analyze both the 'disabling effect of each of the claimant's ailments' and the 'combined effect of all of these impairments.' " (citations omitted).

219 F.3d 378, 393 & 399 (5th Cir. 2000).

Dr. Taylor's examination findings showed that Benjamin had 5/5 motor strength without bony deformity or muscle atrophy (Tr. 311-12). She found that Benjamin could sit, stand, walk and handle objects without difficulty (Id.). The medical expert, Dr. Smith, also opined that Benjamin's carpal tunnel syndrome did not limit his ability to lift, carry, or manipulate his hands (Tr. 391). Benjamin reported to Dr. Taylor that he could dress and feed himself, could lift ten pounds, was able to drive a car and was able to perform some household chores such as shopping, vacuuming, cooking.

Considering the foregoing, the undersigned concludes that the record supports the ALJ's RFC assessment, including his finding that Benjamin's carpal tunnel syndrome does not limit his ability to push, pull, reach overhead, handle and finger.

### **3. Vocational Expert's Testimony**

The ALJ considered the testimony of a vocational expert that a person with Benjamin's RFC could perform the jobs of order clerk of which there are 18,759 in the United States and 152 in Louisiana and final assembler of which there are 62,025 in the United States and 621 in Louisiana (Tr. 19-20, 396).

14

Benjamin argues that the ALJ should not have relied on the vocational expert's testimony in response to a hypothetical question that did not include serious limitations on the ability to reach and handle due to carpal tunnel syndrome.

As discussed above, the ALJ's RFC assessment is supported by substantial evidence of record. Thus, the ALJ's hypothetical posed to the vocational expert, which included the ALJ's RFC assessment, was proper. According the substantial evidence supports the ALJ's reliance on the vocational expert's testimony in response to that hypothetical.

*Conclusion*

The undersigned finds that substantial evidence of record supports the ALJ's decision. Accordingly, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

15

Signed at Lafayette, Louisiana, on February 25, 2008.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)